IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EARL L. LOCKE,                          *
                                        *
        Plaintiff,                      *        CIVIL ACTION NO. 15-00012-B
                                        *
vs.                                     *
                                        *
CAROLYN W. COLVIN,                      *
Commissioner of Social Security,*
                                        *
        Defendant.                      *

## ORDER

Plaintiff Earl L. Locke (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On December 15, 2015, the parties waived oral argument and consented to have the undersigned conduct any and all proceedings in this case. (Docs. 18, 19). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.    **Procedural History**

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on November 4, 2011, alleging that he has been disabled since January 2, 2010, due to "deaf[ness] in left ear and severe arthritis."   (Tr. 107-121, 170).   Plaintiff's application was denied, and on March 21, 2013, Plaintiff was granted an administrative hearing before Administrative Law Judge David R. Murchison.   (Id. at 23).   Plaintiff attended the hearing with his counsel and provided testimony related to his claims.   (Id. at 28).   A vocational expert ("VE") also appeared at the hearing and provided testimony.   (Id. at 38).   On April 25, 2013, the ALJ issued an unfavorable opinion, finding that Plaintiff is not disabled. (Id. at 17).   The Appeals Council denied Plaintiff's request for review on November 18, 2014.   (Id. at 1).   Thus, the ALJ's decision dated April 25, 2013, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action.   (Doc. 1).   The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.   **Issue on Appeal**

   A.   **Whether the ALJ erred in failing to find**

> that Plaintiff's closed head injury and
> low back pain are severe impairments?

## III. Factual Background

Plaintiff was born on April 18, 1965, and was forty-seven years of age at the time of his administrative hearing on March 21, 2013. (Tr. 28, 107). He testified that he did not complete the tenth grade. (Id. at 28).

Plaintiff testified that at some time in the past (he could not say when), he had a head injury and was in a coma and had to learn to walk again. (Id. at 30). Plaintiff's medical records reflect that at age thirty-eight, Plaintiff jumped from a moving vehicle in May 1993, while high on cocaine. He suffered a subdural hematoma. (Id. at 196-97). Surgery was performed to remove fluid, and Plaintiff did well postoperatively and was discharged after one month in the hospital. (Id. at 197). His diagnosis was good upon discharge. (Id.).

Plaintiff's alleged onset date in this case is January 2, 2010, approximately seventeen years after his accident. (Id. at 165). Plaintiff testified that his past work includes working for Rooms to Go lifting furniture and that they fired him after he started having trouble with his foot. (Id. at 29-30). His work history report shows that he worked for Rooms to Go for approximately ten years, from 1999 to 2009. (Id. at 130). His Disability Report shows that he also worked for a carpet company

installing carpet from 1997 to 2000.  (Id. at 171).

Plaintiff testified that now he is in constant pain and can hardly walk.  (Id. at 30, 32-33).  He does not use a walker, although he testified that he needs a wheelchair.  (Id. at 30-31, 36).  According to Plaintiff, he is also totally deaf in his left ear.  (Id. at 37).

Plaintiff testified that he cannot remember if he has spent the night in a hospital in the last year.  (Id. at 33).  No doctor has told him what is causing his problems, nor has any recommended surgery.  (Id. at 33-34).  His treating physician, Dr. Paul Smith, has given him pain medicine because of his foot pain.  (Id. at 34).  Plaintiff testified that his feet have been hurting for two or three years, and while his back also hurts sometimes, his real problem is his feet.  (Id. at 35).

Plaintiff testified that he lived with his aunt, then his mother, and now his daughter. (Id. at 31-32).  He does not drive any more.  (Id. at 30).  He had a driver's license, but it was suspended after he got a DUI.  (Id.).

## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct

legal standards were applied.[1]   Martin v. Sullivan, 894 F.2d
1520, 1529 (11th Cir. 1990).  A court may not decide the facts
anew, reweigh the evidence, or substitute its judgment for that
of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th
Cir. 1986).   The Commissioner's findings of fact must be
affirmed if they are based upon substantial evidence.  Brown v.
Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v.
Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding
substantial evidence is defined as "more than a scintilla, but
less than a preponderance" and consists of "such relevant
evidence as a reasonable person would accept as adequate to
support a conclusion.").   In determining whether substantial
evidence exists, a court must view the record as a whole, taking
into account evidence favorable, as well as unfavorable, to the
Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131
(11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4
(S.D. Ala. June 14, 1999).

B.   **Discussion**

An individual who applies for Social Security disability
benefits must prove his or her disability.  20 C.F.R. §§
404.1512, 416.912.  Disability is defined as the "inability to
engage in any substantial gainful activity by reason of any

---

[1] This Court's review of the Commissioner's application of legal
principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th
Cir. 1987).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a).   The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[2]  20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff

---

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity.   The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.   If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986).   In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  <u>Id.</u>   Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  <u>Sryock v. Heckler</u>, 764 F.2d 834, 836 (11th Cir. 1985).   If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th  Cir. 1999).  <u>See also</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

has not worked since January 2, 2010, the onset date; he has the medically determinable impairments of hypertension and obesity; he does not meet a listing; and he does not have any impairment that significantly limits his ability to perform basic work related activities for twelve consecutive months.  Therefore, he has no severe impairments.  (Tr. 13.).

The ALJ further found that Plaintiff was not credible with regard to his claims of pain and that his medically determinable impairments could not reasonably be expected to produce his alleged symptoms.  (Id. at 14-15).  The ALJ concluded that there were "many, many inconsistencies in the record."   (Id. at 15). Having determined that none of Plaintiff's impairments was severe, the ALJ concluded that Plaintiff is not disabled.  (Id. at 16).

The Court now considers the foregoing in light of the record in this case and the issue on appeal.

### 1.    Issue

**A. Whether the ALJ erred in failing to find that Plaintiff's closed head injury and low back pain are severe impairments?**

Plaintiff's sole argument on appeal is that the ALJ erred in failing to find that his closed head injury and low back pain are severe.   Specifically, Plaintiff argues that these impairments are more than slight abnormalities and that they

have more than a minimal effect on his ability to work.  Thus,
Plaintiff maintains, under the regulations they are "severe"
impairments, and the ALJ erred in finding to the contrary.
(Doc. 12 at 1).   The Commissioner counters that the ALJ's
finding is supported by the substantial evidence in this case
and, thus, must be affirmed.  (Doc. 15 at 6-7).  Having reviewed
the record at length, the Court agrees that Plaintiff's claim is
without merit.

In this case, the ALJ found at step two of the sequential
evaluation process that Plaintiff has the medically determinable
impairments of hypertension and obesity but that none of his
impairments, including his alleged closed head injury and low
back pain, is "severe."  Thus, the ALJ ended the inquiry at step
two.  (Tr. 13).

"Step two is a threshold inquiry," and at this stage, "only
claims based on the most trivial impairments" are rejected.
McDaniel v. Bowen, 800 F. 2d 1026, 1031 (11th Cir. 1986).  At
step two, the ALJ must determine whether the claimant's
impairments, alone or in combination, "significantly limit" the
claimant's "physical or mental ability to do basic work skills."
Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005)
(quoting Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir.
2004)).  In order for an impairment to be severe, it must be
more than a slight abnormality or a combination of slight

8

abnormalities "that causes no more than minimal functional limitations."   20 C.F.R. § 416.924(c).   Indeed, it must "significantly limit[]" an individual's "ability to do basic work activities."   20 C.F.R. § 416.920(c).

Stated differently, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."   McDaniel, 800 F.2d at 1031.   However, a diagnosis alone is insufficient; instead, the claimant has the burden of showing the effect of the impairment on his ability to work. Wind, 133 Fed. Appx. at 690; see also Marra v. Colvin, 2013 U.S. Dist. LEXIS 105669, *13-14, 2013 WL 3901655, *5 (M.D. Fla. 2013) ("It is [the] Plaintiff's burden to prove the existence of a severe impairment, and [he or] she must do that by showing an impact on [his or] her ability to work.").

In addition, as part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so.   See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).   The failure to do so is reversible error.   See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL

413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). However, whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

Here, Plaintiff has failed to satisfy his burden of proof

with respect to the alleged severity of his closed head injury
and low back pain.    Although Plaintiff has produced opinion
evidence from his treating physician, Dr. Paul Smith, M.D., that
Plaintiff cannot engage in any form of gainful employment
because of his closed head injury and low back pain, see
treatment questionnaire (id. at 243), Physical Capacities
Evaluation (id. at 290), and Clinical Assessment of Pain form
(id. at 292), these opinions are inconsistent with the
substantial medical evidence in this case and, thus, were
properly given no weight by the ALJ.   (Id. at 15).

The record shows that on November 17, 2011, Dr. Smith
opined in a Treatment Questionnaire that Plaintiff's closed head
injury has a profound impact on his ability to work and that
Plaintiff cannot engage in any form of gainful employment
because of his closed head injury, which causes confusion.  (Id.
at 243).   In addition, on June 13, 2012, Dr. Smith opined in a
Physical Capacities Evaluation form that Plaintiff cannot sit,
stand, or walk for even one hour each day; he cannot lift/carry
more than ten pounds for even one hour each day; he cannot push
or pull with his arms or legs; he cannot bend, squat, climb,
crawl, or reach; and he has total restriction of all hazardous
activities.   (Id. at 290).   Also, Dr. Smith opined in a Clinical
Assessment of Pain form that Plaintiff's pain will distract him
from adequately performing daily activities or work, that

physical activity will increase his pain greatly and cause distraction from task or total abandonment of task, and that his pain is expected to be severe and to limit his effectiveness. (Id. at 291-92).

As the ALJ found, Dr. Smith's opinions, which essentially render Plaintiff an invalid who cannot sit, stand, or walk for even one hour a day, are inconsistent with his own treatment notes, which do not document this severe level of functional limitations. The record reflects no radiology or other tests to confirm the presence of any severe musculoskeletal impairments, and there are no recommendations from Dr. Smith or any physician that Plaintiff have surgery or be treated with anything other than medication. [3]  In addition, Dr. Smith's opinions are internally inconsistent. Dr. Smith opined in the Physical Capacities Evaluation that Plaintiff could carry ten pounds for one hour each day but that Plaintiff could not stand or walk for an hour. (Id. at 290). Dr. Smith also opined that Plaintiff could lift ten pounds for an hour each day but that he could not

---

[3] The record shows that the ALJ attempted to obtain evidence related to Plaintiff's physical condition by sending Plaintiff to a consultative orthopedist, Dr. William Crotwell, M.D., but Plaintiff failed to appear for the examination and did not respond to the Agency to discuss his reason for failing to appear. (Id. at 16, 299).

reach at all.  (Id.).   As the ALJ found, this is "impossible."
(Id. at 16).   Dr. Smith's opinions are further contradicted by
Plaintiff's and his daughter's report to consultative
psychologist, Dr. Thomas Bennett, Ph.D., and to consultative
physician Dr. Thomasina Anderson-Sharpe, M.D., that Plaintiff
"takes care of his own activities of daily living."   (Id. at
236, 250-51).   Moreover, Dr. Smith's opinions are inconsistent
with Plaintiff's testimony at his hearing that his back hurts
"sometimes" but that his real problem is the pain in his feet.
(Id. at 35).   Plaintiff stated, "sometime my back go out and my
back be hurting me sometime. . . it use to bother me bad all the
time, but now the real[] problem I'm having now [is] in my feet.
. . I had a problem with my back sometime, but not all the
time."  (Id.).

Dr. Smith's opinions are also inconsistent with the
remaining medical evidence in this case, including the following
evidence specifically related to Plaintiff's closed head
injury/alleged mental impairment: (1) consultative Psychologist,
Dr. Thomas Bennett, Ph.D., examined Plaintiff on May 25, 2011,
and was unable to make a diagnosis because Plaintiff was
virtually unresponsive to all of his questions and could give no
information about his disability except that his left foot hurt
(id.); Plaintiff could not give Dr. Bennett any information
about his previous accident or head injury, his personal or

family history, or his work history (id.); Dr. Bennett observed
that Plaintiff "often did not respond" and while "there were a
few occasions when he acted as though he could understand what
was being asked of him," "the majority of the time he either
gave a blank stare or replied, "hold on hold on" (id. at 235);
Dr. Bennett noted that Plaintiff had an "awkward gait;" that his
"posture was bent forward from the hips;" that "he held his head
tilted;" and that he appeared to be confused (id. at 235-36);
when Dr. Bennett asked Plaintiff to count from one to ten,
Plaintiff "gave random numbers" (id. at 235); Plaintiff could
not tell Dr. Bennett the month, date, or situation, and told him
the year with great difficulty (id.); Plaintiff was able to
point to some objects in the room when they were named (id.);
Dr. Bennett diagnosed "rule out cognitive disorder due to
unknown trauma.  Other diagnoses impossible to assess" (id. at
236); (2) seven months later, on December 15, 2011, a second
consultative psychologist, Dr. John Davis, Ph.D., examined
Plaintiff and concluded that there were strong efforts of
malingering found (id. at 245, 248); Dr. Davis noted that
Plaintiff could not count to ten and or say his ABC's, simple
exercises that can be performed by even profoundly mentally
retarded individuals (id. at 248); Dr. Davis noted that
Plaintiff could not describe his activities of "today,
yesterday, or the day before" or describe his trip to the office

that day (id. at 247); Plaintiff told Dr. Davis where he was born and his marital status and provided information about his children and siblings and his previous work history at Rooms to Go (all of which he ostensibly was unable to do during his consultation with Dr. Bennett) (id. at 246); Dr. Davis observed that Plaintiff had "no unusual gait or posture abnormalities," no unusual mannerisms, and his motor activity and attitude were "normal" (in stark contrast to Dr. Bennett's observations that Plaintiff walked with an "awkward gait," "was bent forward from the hips," and "held his head tilted") (id. at 235-36, 246); Dr. Davis ultimately diagnosed Plaintiff with "Malingering." According to Dr. Davis, Plaintiff did not put forth his best effort, and the results of his examination were "an underestimation of the claimant's ability for unknown reasons" (id. at 245, 248); and finally (3) the record is devoid of evidence that Plaintiff ever required outpatient mental health treatment, hospitalizations, or emergency room visits for any psychiatric condition.

Dr. Smith's opinions are also inconsistent with the remaining medical evidence in this case specifically related to Plaintiff's low back pain, including the following: (1) consultative neurologist, Dr. Ilyas Shaikh, M.D., examined Plaintiff on July 15, 2011, at which time Plaintiff complained of left leg, back, and shoulder pain (id. at 239); Plaintiff

reported to Dr. Shaikh that he completed the ninth grade in school and that his last job was lifting furniture, and he discussed his parents and siblings (which he was ostensibly unable to do during his consultation with Dr. Bennett two months earlier) (id. at 240); Dr. Shaikh noted that Plaintiff "has a limp" and "is using a walker . . . provided by his daughter" (id. at 239-40); upon examination, Dr. Shaikh noted that Plaintiff was in no acute distress, that his spine had no tenderness and "fairly normal range of motion," that he could move all four extremities, and that there was no swelling in his extremities (id.); Plaintiff's motor strength was normal (5/5); his fine motor skills were normal; he was able to tie his shoelaces, and his grip strength was 5/5 and bilaterally symmetrical (id. at 241); Plaintiff's neurological examination revealed that he was alert, able to hear and understand normal volume[4] but that he "had variable responses," acted confused, and insisted that his daughter answer all questions (id. at 240); Plaintiff's sensory exam was "variable" as "he demonstrated poor sensation but [his] facial expression of the sensory stimuli was noticeable" (id.); Plaintiff had a negative Romberg test (no loss of balance) and refused to stand on his heels or toes or demonstrate a tandem gait (id.); Dr. Shaikh diagnosed history of

---

[4] The Court notes that Plaintiff demonstrated no hearing difficulty at his administrative hearing.  (Tr. 23)

closed head injury, history of sub-dural hematoma evacuation, poor hearing and poor vision demonstration, and "*exaggeration* of post closed head injury complaints"[5] (id.) (emphasis added); Dr. Shaikh noted "poor effort" during the examination (id. at 242); (2) consultative examiner, Dr. Thomasina Anderson-Sharpe, M.D., examined Plaintiff on December 17, 2011 (two days after Plaintiff was examined by consultative psychologist, Dr. Davis), and noted that Plaintiff was a poor historian and that whenever he got confused, he would say that he "likes Kool Aid or watches TV" (id. at 250); Plaintiff's chief complaints on that date were back problems, arthritis, hearing problems, and pain every day, which Plaintiff related to his previous car accident (id.); Plaintiff reported that he "manages all [of his own] ADL's" and that he has had no hospitalizations or emergency room visits in the last two years (id. at 250-51); upon examination, Dr. Anderson-Sharpe noted that Plaintiff was in no acute distress but that he got up and down off of the examining table with difficulty (id.); Dr. Anderson-Sharp documented that Plaintiff demonstrated a broad-based right limp with positive Romberg and

_____

[5]Plaintiff points to Dr. Shaikh's notation during his examination that Plaintiff gave his wrong age and education which "demonstrates confusion . . . probably related to his closed head injury" to support his argument that his closed head injury is severe.  (Tr. 242; Doc. 12 at 3).  However, Dr. Shaikh's subsequent diagnosis of "exaggeration of post closed head injury complaints" places this note in context and, when combined with this and other evidence of Plaintiff's malingering, renders Plaintiff's argument unpersuasive.

was unable to heel toe walk or tandem gait (id. at 252) (in contrast to Dr. Davis' observation two days earlier that Plaintiff had "no unusual gait or posture abnormalities" (id. at 246); Dr. Anderson-Sharpe noted that no assistive device was used or needed (contrasting Dr. Shaikh's observation five months earlier that Plaintiff "has a limp" and "is using a walker" but consistent with Plaintiff's hearing testimony that he does not use a walker) (id. at 31, 239-40, 252); that Plaintiff's motor strength was normal (5/5), and that his sensory exam was normal in all extremities (id. at 252); and finally, (3) at his hearing on March 21, 2013, Plaintiff responded at length to the ALJ's questions about his background, his school history, his past work history, his medical problems, his doctors, and his medications (despite appearing completely unable to speak or recall any of these events during his consultative evaluation with Dr. Bennett on May 25, 2011 and with Dr. Anderson-Sharpe on December 17, 2011)[6] (id. at 28-43, 250).

Based on the foregoing, the Court finds that the ALJ had good cause to discredit Dr. Smith's opinions and that the substantial evidence supports the ALJ's determination that Plaintiff's closed head injury and low back pain are not severe

---

[6] As discussed, when asked questions by Dr. Anderson-Sharpe, Plaintiff would appear confused and say random things like, "[I] like Kool Aid" or "[I] watch[] TV."  (Tr. 250).

impairments.  Accordingly, Plaintiff's claim is without merit.

**V.     Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **29th** day of **March, 2016.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
